## ABRAHAM KNOX *versus* ISRAEL CHADBOURNE.

The Rev. Stat. c. 114, § 38, does not exempt *machines* from attachment or sale on execution. Articles correctly designated by the use of that term, *in popular language,* cannot be considered as exempted by the words of the statute, "*the tools of any debtor.*"

A "*peg machine*" is not exempted from attachment, or sale on execution, under that section of the statute.

EXCEPTIONS from the western district court, GOODENOW J. presiding, as follows: —

"This is an action of trespass for the taking by defendant, a certain "peg machine," the property of plaintiff. The defendant pleads the general issue and for brief statement, says, that he took said machine, by virtue of a writ in favor of Peter Frost against said Knox, as defendant, in which suit, judgment was obtained, and said machine was regularly seized and sold on the execution, recovered in said suit.

" The plaintiff introduced Mr. Ivory Bean, who testified that he sold said machine, about ten years since, to the plaintiff for $50, having some years before purchased it in Bradford, Mass. That after he sold the same, the said plaintiff worked with him awhile, and paid him for giving information in the business of making pegs.

" Also there was testimony tending to show, that the plaintiff worked in Waterborough, on his own account, making pegs; that while he was at work at Waterborough, the said machine was for about one year, operated by horse power. Also, Mr. Bean testified, that the machine was constructed to be used by hand power, and was always so used, excepting the time above named at Waterborough; that similar machines were in use in Massachusetts, where he purchased this, worked exclusively by hand power, and that after plaintiff purchased it he worked it alone in making pegs; he transported the machine from Georgetown, Massachusetts, to Maine, in a one horse wagon, and that it required but one person to use it.

" Joseph Downs, Jr., testified that about seven or eight years ago, the plaintiff brought the machine to Waterborough and used it, making pegs, as his principal business; that it was constructed to use by hand power, and was so used by said Knox, till about a year before it was attached, when it was placed in a mill of Peter Frost, and there used by the application of horse power, by attaching other machinery to it; that it was then taken out of said mill, and was in his blacksmith's shop when it was attached on the writ; that he, the witness, receipted to the officer for the machine when attached, and that the plaintiff worked with the machine, operating it by hand power, in his other shop, after it was attached and before the officer took it upon execution and sold it; that the machine was worked to saw the bolts, which were then taken and shoved in one end by hand, to make the end of the peg, and then the machine was used to point the other end of the bolts by grooving them, and afterwards the bolts were split by hand, by use of a frow; that one person could operate the machine

alone; and plaintiff did so use it. It was proved by defendant's witnesses, that when said machine was put into Frost's mill, and operated by horse power, said Frost was to find horse, mill and wood, and board the plaintiff, the plaintiff to make the pegs and each to receive half the proceeds of the pegs made.

" There was testimony introduced by defendant, tending to show that the plaintiff occasionally worked at painting and joiner's work.

" There were submitted to the jury two questions. *First.* Was peg making a trade or occupation, within the meaning of the Revised Statutes, c. 114, sect. 38 ? *Second.* Was peg making the occupation of the plaintiff ?

" GOODENOW DIST. J. charged the jury, that as the machine could be used by a single person, and was not of great value, and operated by hand power, they should regard it as a tool of the plaintiff's trade or occupation ; and they could determine from all the testimony, whether peg making was the trade and occupation of the plaintiff; and if so, whether this machine was necessary to the prosecution of the ordinary and necessary business of his calling ?

" If so, the machine was exempted from attachment, and the plaintiff would be entitled to recover. If otherwise, their verdict should be for the defendant. The jury found a verdict for the plaintiff for forty dollars damages, which makes a part of the case. To all which rulings of the Court, the defendant excepted.

" COPY. Verdict of the jury.

" The jury find that the defendant is guilty in manner and form as the plaintiff has declared against him, and that peg making was a trade within the exemption of the statute ; and that peg making was the plaintiff's occupation; and assess damages for the plaintiff in the sum of forty dollars."

This case was argued in writing.

*McDonald,* for the defendant.

The defendant complains of the Judge's charge in this, for

that he instructed the jury to regard the machine in question, as a tool of the plaintiff's trade.

Our statute, exempting the necessary tools of trade, is copied from the Massachusetts act of 1805, which act received a judicial construction in the case of *Daily* v. *May*, 5 Mass. R. 313. The Court in that case say, that "tools of trade do not include the implements of husbandry," adding as a reason, that "their use necessarily implies the ownership of horses and oxen." The same act of 1805 was before the Court again in the case *Buckingham* v. *Billings*, 13 Mass. R. 82, in which case the statute and the rules for its construction were more thoroughly discussed. It is therein remarked by Chief Justice Parker, that the statute, being in derogation of the common rights of creditors to secure their debts out of the property of debtors, ought to have a strict construction ; a remark which commends itself alike for its legal accuracy, and wholesome honesty. With this principle in view, the Chief Justice proceeds to inquire into the intention of the Legislature, and remarks, that, it is not to be supposed that it was designed to comprehend in the term tools, (which are properly small articles used by hand) complicated machinery or expensive utensils, evidently making an exception of complicated machinery, from the very nature of a tool, a tool being a small article used by hand ; and a further exception of expensive utensils is made for the reason, that as the value of household furniture is limited to fifty dollars, it may well be inferred, that the tools intended to be excepted are such only as are suitable to the condition of a man who is reduced to so humble a style of housekeeping.

The last named case was fully considered by the Court in 1830, in the case of *Danforth* v. *Woodman*, 10 Pick. 424 ; and was fully sustained, although it was supposed that a more liberal construction of the statute was suggested in *Howard* v. *Williams*, 2 Pick. 81. The Court say, that such a supposition was entirely groundless.

From the doctrine of the cases above referred to, it is evident, that the term tools of trade, in our statute, is to be

limited in its meaning. Neither implements of husbandry, nor a printing press, nor types are included. Yet all these might come within the popular meaning of the term tools. But in the application of this statute they could not be regarded as such, for they are not small articles to be used by hand, nor are they simple instruments of manual operation, — a printing apparatus being regarded as complex machinery.

The machine in question is neither a small article nor a simple instrument. Although the case finds that it was brought from Massachusetts in a single horse wagon, it is hardly supposed that it will be contended that one horse drew it; and although the case finds that it required but one person to tend it, it certainly will not be pretended that one man could move it. It is constructed sufficiently strong to be propelled by horse power, and must be of considerable weight to ensure the requisite strength.

The mechanism of the machine can only be inferred from the work performed by it. By its own operation it saws off the bolts of proper length, which being shaved on one end by hand, and again put into the machine and grooved, then split into pegs by hand. A machine, which by being merely put in motion, is capable of doing this work, must necessarily be complicated in its construction. I think it apparent that a statute which is only designed to comprehend small articles used by the hand should not be construed so as to include such a machine as the one in question, certainly not, if the construction suggested in *Buckingham* v. *Billings,* is adopted.

It is further suggested, that if this machine be regarded as a tool of trade, it is difficult to perceive where the Court will establish the line of distinction between tools and machinery, or in other words fix the point at which tools shall cease and machinery begin.

The Dist. Judge has given three *indicia* for regarding the machine as a tool, viz.: because it could be used by a single person, — was not of great value, — and could be operated by

Knox *v.* Chadbourne.

hand. It is thought that all of these reasons, will, upon examination be found faulty, if the word tool is understood either in its strict sense or judicial construction. I only propose, however, to examine the third reason given by the Dist. Judge, viz. : that as the machine was operated by hand power it was a tool of trade, thinking it self-evident, that the other two are but blind guides to any such conclusion.

It is hardly understood how the motive power of machinery can change its character. It may be a mode of classification, and as such used for distinction. Thus, we speak of a steam factory or steam grist-mill in contradistinction to a factory and grist mill ; but the factory and the mill remain the same in both cases, and it is not conceived how they would lose their character as machinery, should some Sampson arise of sufficient physical strength to put them in operation without the aid of foreign power.

Aside from this speculative view of the point in question, it must be admitted, that the printing press of Mr. Buckingham was operated by hand power, yet Chief Justice Parker failed to discover in that fact, a reason for considering it a tool.

As the machine in question could be operated by horse power as well as by hand, its character must vary from a tool to machinery, as its owner found it most economical to operate it either by horse or by hand.

By allowing the machine in question to be a tool of trade, we not only violate the judicial construction of the statute already referred to, but we also are compelled to disregard the ordinary meaning of the word tool ; which is "any instrument lifted up or taken up to work with." In this case the machine was too ponderous to be lifted up, and whether propelled by the lever held in a man's hand, or by the gear attached to a horse power, it did the same work. If in the first instance it was the tool of the man, in the last it would be equally so of the horse.

The defendant further objects to the charge of the Judge in this, for that he left it to the jury to determine whether the employment of the plaintiff was a trade within the meaning

of the statute. This is a question of law, which the Court should have decided. It is conceived to be similar to a new promise, wherein the Court informs the jury what amounts to such an undertaking, and leaves it to them to decide if the facts warrant such finding. In this case it is contended that the Court should have informed the jury what constituted a trade, and left it for them to decide whether the employment came within the direction. I suppose it may be replied that although a question of law was left to the jury, they having decided it correctly, the verdict should not be disturbed.

I do not propose to go fully into a discussion of what constitutes a trade within the meaning of the statute, yet I think it justly and easily inferable from the whole enactment, being taken together, that the Legislature only intended those employments which entitled the person engaged in them, to the appellation of mechanics.

The Judge told the jury, that the machine was a tool of trade, and left it for them to decide whether peg making was a trade, a conclusion which would seem to be implied, if the machine was a tool of trade.

The jury returned a special verdict, which is made a part of the case. They find, that peg making is a trade within the exception of the statute. Also, that it was the trade or occupation of the plaintiff. They omitted to find the important fact whether the machine was necessary for the plaintiff's trade.

The question of necessity, was the peculiar one for the jury. Yet, their verdict, while it contains much that is irrelevant, is entirely silent on this point.

Should the Court concur in opinion with the District Judge, that the machine was a tool of trade, the very next inquiry would be upon the point of necessity. The burthen is upon the plaintiff to show that it is a necessary tool; which should be shown affirmatively, to render even a tool exempt from attachment.

*Appleton*, for the plaintiff.

In this case the plaintiff claims damages of defendant for

the acts of his deputy in taking and selling the peg machine, described in the declaration, upon the ground, that it was exempted from attachment by the Rev. Stat. c. 114, sect. 36. The statute referred to, exempts from attachment the tools of any debtor, necessary for his trade or occupation.

The case shows and the jury have found, that peg making was a trade, and that it was the plaintiff's trade and occupation; and under the instructions of the Court, they have also found that the machine in question was necessary for the prosecution of his ordinary business and calling.

The only question presented by the exceptions is, whether the charge of the District Judge to the jury was correct. He charged them, that as the machine could be used by a single person, and was not of great value, and operated by hand power, they should regard it as a tool of the plaintiff's trade or occupation, and they could determine from all the testimony, whether peg making was the trade and occupation of the plaintiff, and if so, whether this machine was necessary to the prosecution of the ordinary and necessary business of his calling. If so, it was exempted from attachment, and plaintiff was entitled to recover, otherwise their verdict should be for defendant.

It is difficult to perceive the error or "fault" in those instructions, and it is not quite "self-evident," that they should be considered "blind guides" to the jury in forming their opinions. Especially, as they appear to be reasonable and just, and some of them are almost identical with the language used by C. J. Parker in the case cited and relied on by the counsel for the defendant.

In deciding what is meant by the term tools in the statute, it becomes necessary to look at the design and object of the statute. For it will not be denied that the intention of the Legislature, when ascertained, should be fairly and fully carried into effect. The terms used in the act of exemption, indicate that object too clearly to admit of doubt or misconstruction. The tools of any debtor necessary for his trade or occupation, must have been intended to embrace every variety of instru-

ments or implements of manual operation, made use of by
that large class of persons, who obtain their subsistence and
that of their families by their daily labor, in whatever business
they may be engaged, whether called and known as mechanics,
artizans, tradesmen, manufacturers, or handicraftsmen, or any
other designation expressing their peculiar employment.  The
words trade and occupation, in the statute, are sufficiently broad
to comprehend all kinds of employment and business.  Hence
the word tool in connection with them, must be understood  in
its broad and popular sense, and not according to the  narrow,
restricted definition given to it by some lexicographers.  Take,
for instance, the definition adopted by defendant's counsel, that
it is "any instrument lifted up or taken up to work with."  It
will at once be perceived, that this would exclude from the ex-
emption, a great variety of instruments, indispensable to the
business and occupation of a large class of tradesmen and
mechanics, who are justly entitled to its benefit.  For while it
would protect the hammer of the blacksmith, it would exclude
his anvil and vise.

The statute in question was enacted for humane and wise
purposes, and in its effect and operation, has been found equal-
ly beneficial and useful to the creditor and debtor ; and while
it should not be extended by construction, beyond its fair and
reasonable design, it should not be so limited and restricted as
to defeat its proper and legitimate objects.  It is said, that stat-
utes in derogation of the common law rights of creditors
should be construed strictly, "but they are also to be construed
sensibly, and with a view to the objects aimed at by the Legis-
lature."  *Gibson* v. *Tenney,* 15 Mass. R. 205.

The views of the Legislature on this subject cannot be  mis-
taken.  Its course has been liberal in extending and increasing
the articles exempted from attachment.  In this respect the
policy of the State has been wise and just, and adapted to the
progress of society, and the sentiments of an enlightened age.
Since Maine has become a State, the articles exempted from
attachment have been more than doubled, in number and value.
The effect has been to augment the comfort and happiness of

Knox *v.* Chadbourne.

poor debtors and their families, and by securing to them the means of living, to encourage and elevate them. And instances are rare, if indeed there be any, where creditors have thereby suffered injury or injustice.

Few cases have been reported in Massachusetts, and but one in this State, giving a construction to this clause of the statute, although the law has been in force over forty years. The first case, that of *Daily* v. *May,* 5 Mass. R. 313, for taking an ox-cart wheels, yoke, bows, &c., was decided expressly on the ground that the " case did not state that they were the tools of the plaintiff, necessary for his trade and occupation." The Court subsequently remark, however, that if they could presume that the chattels seized were necessary for plaintiff in tilling his land, yet he must fail ; for it would be preposterous to admit that the Legislature would extend the protection of the statute to the cart and plough and their gear, and leave the cattle, without which they would be of no use, to be seized on execution. This reasoning may be correct, for it is that of a man eminent for wisdom, yet, suppose the oxen had been exempted, and the debtor owned no land to cultivate, might not the inference have been equally strong, that in such a case, the exemption, though expressly given, did not apply, because the oxen and implements of husbandry, would be of no use without land. But whether this *dictum,* be satisfactory or not, the effect of it has been long since done away by Legislative action, and it is entitled to very little consideration in the decision of this case. The fact, that so few cases have arisen, touching the construction of this clause of the statute, shows that practically, a liberal and common sense construction has been given to it, otherwise, it would have been amended and enlarged by the Legislature, as almost every part of the act has been.

The peg machine in question comes within the letter and spirit of the statute. The jury have found that it was a tool or implement of plaintiff's trade. Though called a machine, it was simple in its construction and used by hand power for which it was made, and was of comparatively small value.

The fact that it was once propelled by horse power does not alter its character. That was a mere experiment and proved a failure, and was abandoned, as it involved too large an expenditure to be profitable. Many of the tools and implements of mechanics, necessary to their business, may be worked or used by horse or water power, and often are. As the smith's bellows and lathe, and the turner's wheel, although usually moved by the muscular power of man. But there can be no just reason or pretence for not exempting them on that account. The case finds, that this instrument was constructed to be used by hand, and was so used, and not so ponderous but it was conveyed from Massachusetts in a one horse wagon and one horse, as is clearly implied in the report, and as was the fact. Since the shoe business has become so important a branch of industry, peg making has become a trade, and this machine was invented to perform by muscular power a part of the labor, and facilitate the work, by sawing the bolts and grooving them, when sawed, to point the pegs.

Very many of the tools used by jewellers, blacksmiths, and joiners, which are necessary and indispensable for their work, are more complicated in their construction and much more costly and expensive, than the machine in question. Such as the vise, lathe, rolling and morticing machines, &c., which are simple in their construction, but not more so than this, yet necessary to enable them to conduct their appropriate business in a convenient manner.

At common law the instruments of a man's trade were not distrainable for rent, under certain circumstances. In *Simpson* v. *Hartop*, Wills, 512, a stocking frame for making stockings, was held to be an instrument of trade, and distrainable. So in *Gorton* v. *Falkner*, 4 T. R. 565, looms for weaving small wares, were held to be instruments or tools of trade. The peg machine was the tool or instrument of plaintiff's trade, as the jury have expressly found, and certainly the value of $40,00, as estimated in this case, was not an unreasonable amount for the plaintiff to hold free from attachment, the original cost being but $50,00, compared with the amount in

value of the tools of other mechanics, which often amount to upward of $150,00, or with the exemptions of the farmer, which ordinarily exceed $300,00, including his oxen and produce.

The charge of the District Judge is fully sustained by the principles settled and the reasoning of the Court in the case of *Howard* v. *Williams,* 2 Pick. 80. In that case a jeweller's tools were held to be exempted from attachment to the amount of $556,58, and the exemption was not limited to the tools used by the tradesman himself with his own hands, but was extended to those used by his apprentices or journeymen; being such as were necessary to enable him to carry on his trade in a convenient and usual manner. Lincoln J. in giving the opinion of the Court, says, the design and object of the law was to secure to handicraftsmen the means by which they are accustomed to obtain subsistence in their respective occupations; and the only rule by which it can be restricted is that of good sense and discretion in reference to the circumstances of each particular case. In *Patten* v. *Smith,* 4 Conn. R. 450, Hosmer C. J. says, "as a general legal truth, a statute in derogation of the common rights of creditors ought to receive a strict construction, but if it concern the public good, it should be construed liberally. Now the public has a deep interest in the prosperity of mechanical employments, and a sufficient corrective is interposed by the prescribed inquiry, whether the articles claimed to be exempted are necessary."

The case of *Buckingham* v. *Billings,* 13 Mass. R. 80, and the principles upon which it was decided, when carefully examined, does not sustain the positions of defendant.

In that case the tools attached amounted in value to $852, and those left in the possession of the plaintiff amounted to $1600, and was decided upon two grounds. *First,* that the statute was not intended to comprehend complicated machinery or expensive utensils, which might be of great value, and thus enable a debtor to hold a great capital, which could not be reached by a creditor. Thus determining only that the furniture of a printing office was too expensive to have been

exempted by the statute, and cautiously avoiding cases like the present, to which the argument and reasoning of the Court do not apply.

That case was decided, secondly, on the ground that a printing apparatus in all respects complete and of great value, had been left with the plaintiff by the use of which he might carry on his trade in many branches.

The case of *Danforth* v. *Woodward*, 10 Pick. 423, was trespass for attaching printer's types and forms to the value of $147,00 and was decided upon the grounds first noticed in the preceding case. The Court say, types cannot be used as tools of trade by a printer after he is stripped of the other parts of his printing apparatus, so that the exemption of the types would not enable him to pursue his trade and obtain his subsistence, which was the object of the statute. Besides, property so valuable as a complete printing apparatus cannot be protected under the statute. The object being to make a humane provision for the poor, but not to enable an insolvent person to withhold a large amount of property from the just claims of his creditors.

How far some of the principles assumed in those cases are correct; it may not be necessary for the Court now to determine. They would, in effect, however, exclude a large class of mechanics from all participation in the benefits of the statute, contrary to its express provisions and obvious intentions. For if the types of a printer are not properly the tools of his trade, and therefore exempted from attachment, it is difficult to conceive of any case where the object of the law may not be defeated by an ingenious and specious argument. This construction of the statute appears the more harsh and unreasonable when it is considered, that many individuals support themselves and families by the business of printing, making use of their own types, of small value, and a hired press. As well might a farmer's cart and plough be taken from him, because at the time he happened to be without oxen.

The Supreme Court of Connecticut, in the case of *Patten* v. *Smith*, before cited, decided, that a printing press, cases and

types were tools, within the meaning of their statute (substantially like ours) exempting certain articles from execution. That Court, in commenting on the case of *Buckingham* v. *Billings*, say, that they cannot subscribe to the principles there assumed, or admit so confined a construction of the terms of the act. It was the object of the statute, they say, to protect the tools of a trade, so far as they were indispensably necessary; and the words of this, as of other laws, ought to be expounded, according to their popular acceptation, in order to attain the legislative intent.

In *Gibson* v. *Jenny* and *Howard* v. *Williams*, already cited, and the more recent case of *Brown* v. *Wait*, 19 Pick. 471, the Court in Massachusetts seem to have entertained more reasonable and liberal views of the design and purposes of the statute. The true principle is concisely but accurately stated by SHEPLEY J. in pronouncing the opinion of the Court in *Ordway* v. *Wilbur*, 16 Maine R. 263. He says, " the intention of the Legislature in exempting certain goods from attachment, should be carried into effect. A construction of the statute so liberal as to allow it to be perverted to fraudulent purposes, should be avoided, while one so strict as to defeat the object designed ought not to prevail."

The inquiry is made, if this machine be regarded as a tool of trade, where will the Court establish the line of distinction between tools and machinery? The answer to this inquiry may be made in the language of LINCOLN J. in the case of *Howard* v. *Williams*, already referred to. "The only rule," he says, "by which the statute can be restricted, is that of good sense and discretion, in reference to the circumstances of each particular case. Whenever an attempt is made to abuse the protection, which the law affords to the unfortunate debtor, in the prosecution of the ordinary and necessary business of his calling, to the purpose of a fraudulent security of property from attachment by the possession of unnecessary tools of trade, or those of unreasonable price and value, it will be in the power of the creditor to defeat the object, by successfully

submitting the question of their necessity to the decision of a court and jury.

But it is further objected to the charge of the District Judge that he left it to the jury to determine whether the employment of the plaintiff was a trade within the meaning of the statute; and that this was a question of law which the Court should have decided.

If this was correct in point of fact, it would not be a sufficient reason for disturbing the verdict, the jury having decided right, as has been often determined. The exceptions state that two questions were submitted to the jury; first, was peg making a trade or occupation within the meaning of the statute? Second, was peg making the occupation of the plaintiff?

Both these questions, and these alone, were strenuously pressed in argument to the jury by defendant's counsel. The instructions of the Judge were, that as the machine could be used by a single person, was not of great value, and operated by hand power, they should regard it as a tool of the plaintiff's occupation or trade; and they could determine from all the testimony, whether peg making was the trade and occupation of plaintiff, and if so, whether this machine was necessary to the prosecution of the ordinary and necessary business of his calling. If so, the machine was exempted from attachment, and the plaintiff would be entitled to recover. Surely there can be no just ground of objection to the charge that it was not sufficiently distinct and explicit on this point.

But another objection is made, that the jury have omitted to find the fact, whether the machine was necessary to the plaintiff's trade.

It is too late now to make this objection, as it does not appear to have been taken in the court below. *State* v. *Davis*, 23 Maine R. 403.

But another and conclusive answer to this objection is, that the Judge charged the jury to find whether the machine was necessary to the prosecution of the plaintiff's business or trade, and if so, and they found the other facts, the plaintiff was

entitled to recover. Now, it necessarily follows, from the finding of the jury for plaintiff, that they must have found that the machine was necessary for the plaintiff's trade. In finding for plaintiff they must have found this fact, under the instructions.

The verdict is not technically a special verdict, as defendant's counsel has stated in his argument It is a general verdict with a special finding upon two points, to which their attention was particularly directed, and upon which they were requested to be able to report specially. Instead of stating how they found on these two points specially from their general verdict, the jury incorporated them into it. Indeed, the verdict would have been good and sufficient under the charge, without the special finding. It is, therefore, but surplusage and does not vitiate the general verdict. 3 Blackstone's Com. 377, 378.

*Howard* and *G. F. Shepley*, for the defendant, in reply.

The question involved in the present discussion, can hardly be more clearly or fairly stated, than the learned counsel for the plaintiff has stated it in the first paragraph of his argument.

He says, " the plaintiff claims damages of the defendant, for the acts of his deputy in taking and selling the peg machine described in the declaration, upon the ground that it was exempted from attachment by the Revised Statutes, c. 114, sect. 38. The statute referred to, exempts from attachment the tools of any debtor, necessary for his trade or occupation."

The article attached, was a machine, described in the plaintiff's declaration and argument, as a peg machine, and consequently not embraced in the exemption of the statute, unless the words "tool" and "machine" are synonymous, or unless the word tool is the more comprehensive and generic term, and embraces the word machine, as one species of tool.

It will hardly be contended that the words are synonymous, or identical in meaning.

A machine, as defined by Webster, is more properly a complex structure, consisting of a combination or peculiar modification of the mechanical powers.

A tool, according to the same lexicographer, is an instrument of manual operation, particularly such as are used by farmers or mechanics, as the tools of a joiner, smith, or shoemaker.

This broad distinction between the two terms, is one recognized not only by lexicographers, and the learned, but observed in the every day language of common life.

No person speaks of an article manufactured by machinery and one made by tools in the hand of the operator, as if they were fabricated in the same way. When an article is said to be made " by machinery," we understand that the skill which moulded and fashioned it, was in the brain of the inventor of the machine. When the same article is spoken of as made " by hand," we understand it as having been made by the aid merely of tools, " lifted up and guided by the hand of the operator," and exhibiting his skill, while in the case of the article made by machinery, nothing is usually necessary but the application of the requisite quantity of power, or brute force.

The fore plane of the joiner is a tool, " an instrument of manual operation," lifted up and guided by the hand of the operator." But when that joiner does the same work with " Woodworth's planing machine," does that become a tool also, and exempt from attachment ?

The saws, by means of which the peg maker formerly sawed off his blocks, and the knives and mallets, with the aid of which, he split the blocks into pegs, were the tools of his trade, but when he substituted for these tools a machine, which simply upon the application of the requisite power of man, horse, or steam, did the same work, it did not become a tool, simply because it was substituted in the place of tools.

Nor is it more reasonable to contend, that the word tool is the generic term, and embraces the word machine as one of the species ; for the one has none of the general attributes of the other. Those peculiar properties or attributes of an article which entitle it to be classed as a tool, are all wanting to machines in general, and especially to the one in question.

The result of including the word machine as a species of tool, in the exemption of the statute, would be to embrace in

the exemption from attachment, the locomotive of the engineer, the power press of the printer, and all other machines, however complicated and expensive, provided they were only necessary in the debtor's trade or occupation.

The argument for the plaintiff seems to be grounded upon the assumption, that the exemption embraces every article of the debtor necessary for his trade or occupation.

The library of the jurist, the theologian, and the author, are necessary and indispensable to each one of these in their respective occupations. So is his machine to the maker of pins or nails. So is his thrashing machine to the man whose occupation is the thrashing of his neighbor's wheat, so is the hydraulic, or other press, to the man whose occupation is to compress hay. Yet, surely, all these are not exempt from attachment, and why? Because, though necessary in these respective occupations or trades, they are not tools, and therefore not embraced in the terms of the exemption.

The District Judge endeavors to bring this machine within the statute exemption of tools, or in other words to designate it as a tool, upon these three grounds. " That as the machine could be used by a single person, was not of great value, and operated by hand power, they should regard it as a tool." With deference, we submit, that these are very unsafe attributes or tests, to rely upon as guides, in determining whether or not a given article is a tool. Tried by the tests designated in the charge of the District Judge, a hand organ is a tool ; for it can be used by a single person, is not of great value, and operated by hand power, and we might add for the benefit of the learned counsel for the plaintiff, " necessary for the occupation of " the owner.

Printing presses of one description may be used by a single person. So may many very complicated machines, and within the case of *Buckingham* v. *Billings,* they are not exempted from attachment.

The mere fact, that " it is operated by hand power," although that is one of the attributes of a tool, does not alone confer that character upon it, and besides, this machine is operated

indifferently, by "hand power" or by horse power. Was it a tool when operated by hand, and a machine when driven by horse power? Exempt from attachment when operated by hand power and attachable when driven by a horse?

In attempting to arrive at a true construction of a statute provision, we shall be more likely to arrive at a correct conclusion by looking at the statute itself, than by speculating upon what it ought to be, or upon what the framers of the law intended to have made it.

The only contrariety which is apparent in the decisions upon the construction of a similar provision of the statute in Massachusetts, has arisen very evidently from the application of such tests as those applied by the District Judge, and those contended for by the counsel for the plaintiff, instead of meeting directly the simple question, whether the article contended to be exempted is, or is not, fairly embraced in the terms of the statute exemption.

At the present time, when the debtor may ride to and from the place, where the poor debtor's oath is administered to him, with his own span of horses, exempt by law from attachment, there would seem to be little occasion to call upon the Court to enlarge, by judicial construction, that protection, which the Legislature is so ready to extend alike to the unfortunate, and to the dishonest debtor.

The opinion of the Court was drawn up by

SHEPLEY J.—The question presented upon the merits is, whether a "peg machine" was liable to attachment and sale as the property of the plaintiff, upon precepts legally issued against him.

The jury were instructed, "that as the machine could be used by a single person, and was not of great value, and operated by hand power, they should regard it as a tool of the plaintiff's trade or occupation."

By the provisions of the statute, c. 114, § 38, "the tools of any debtor necessary for his trade or occupation" are exempted.

The Legislature must have used this language with a design to make known to the citizens what property was exempted from attachment and execution. The people were to be informed by it, what their rights were. The intention must have been to communicate the ideas, which would be conveyed to their minds by the ordinary and popular use of the language. This was the rule of construction adopted in the case of *Patten* v. *Smith*, 4 Conn. R. 450. No property can therefore be considered as exempted or intended to be, as a tool, which in popular language is not and cannot be designated or described by the use of that word.

The bill of exceptions and the written arguments show, that the article of property attached cannot be intelligently described, without the use of the word machine or of other words, neither commonly used nor well suited to designate or describe a tool. Neither the presiding Judge, nor any one of the counsel, nor any witness, appears to have been able to designate the property attached without the use of the word machine.

The statute does not exempt machines. Articles correctly designated by the use of that term in popular language cannot be considered as intended to be exempted by the words " the tools of any debtor." If all property properly designated by the use of the word machine, were to be exempted by the use of the word tool, property never designated by the use of the latter word in a correct, technical, or popular sense would be exempted. If machines are exempted, there can be no limitation of that exemption to a particular class of them on account of their value. The exemption is not by the statute made in any degree to depend upon the value; and there would be no criterion, by which the value could be determined. There must be some rule or principle, by which to determine what property is exempted by the use of the word tools, and what is not exempted by the use of the word machines. No other rule is discernable more satisfactory than that arising out of the popular use of language. That determines ordinarily with sufficient accuracy, what article is a tool, and what article is a machine. By the use of it, the article attached is de-

termined to be a "peg machine," and not a tool. It may possibly happen, that by some unusual use of language an article properly designated as a tool and easily described as such may commonly be called by those who use it, a machine. In such case it is not intended to state, that it would not become liable to attachment, because in popular language it was commonly called a machine. For in such case as it could with more propriety be designated and described as a tool, the more correct description might prevail over the more common and vulgar one. It might well constitute an exception to the general rule, that the popular use of language should determine the character of the article.

*Exceptions sustained and new trial granted.*